# Frankel Syverson pllc

FRANKEL SYVERSON PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (020191)
patti@frankelsyverson.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Barrett, on behalf of himself and all those similarly situated, | Case No. |
| Plaintiff, | **COLLECTIVE ACTION AND CLASS ACTION COMPLAINT** |
| v. | |
| Professional Towing and Recovery, LLC, an Arizona corporation, | **[Jury Trial Demanded]** |
| Defendants. | |

Plaintiff Kevin Barrett ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendant Professional Towing and Recovery, LLC, an Arizona corporation (referred to as "Professional Towing" or "Defendant") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, Arizona wage laws, A.R.S. § 23-350, *et seq.* ("Arizona Wage Statute) and A.R.S. § 23-371, *et seq.* ("Arizona

- 1 -

Paid Sick Time Statute"), A.R.S. 23-362 *et seq.* ("Arizona Minimum Wage Statute"), and related claims of retaliation under these statutes.

## NATURE OF THE ACTION

1.    Plaintiff alleges on behalf of himself and all other similarly situated Tow Truck Drivers of Defendant who elect to opt in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Action Members") that they are entitled to unpaid wages including unpaid minimum wage and overtime for all hours worked exceeding forty (40) in a workweek, liquidated damages, and attorneys' fees and costs, pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq.*, specifically 29 U.S.C. §§ 206, 207, 216(b).

2.    Plaintiff further alleges, pursuant to Fed. R. Civ. P. 23, on behalf of himself and a class of other similarly situated Tow Truck Drivers employed by Defendant within the State of Arizona (the "Arizona Class Members"), that they are entitled to timely payment of all wages due (including regular wages, minimum wages, and overtime wages), plus interest, treble damages, and penalties as allowed by the Arizona Wage Statute, A.R.S. § 23-350, *et seq.*, and that they are entitled to payment of the minimum wage, plus interest, statutory damages, and penalties as allowed by the Arizona Minimum Wage Statute, A.R.S. § 23-362, *et seq.* and that they were entitled to accrued paid sick time as required by A.R.S. § 23-362, and A.R.S. § 23-371, *et seq.*

3.    Plaintiff further alleges, on his own behalf, pursuant to the FLSA, 29 U.S.C. §§ 215(a)(3) and 216(b), that he is entitled to lost wages, and damages, including liquidated damages, fees, and costs for Defendant's unlawful retaliation against him resulting from his complaints relating to unpaid overtime and minimum wage.

4.    Plaintiff further alleges, on his own behalf, pursuant to the Arizona Minimum Wage Statute, A.R.S. § 23-364, that he is entitled to damages in an amount not less than one hundred fifty dollars ($150) for each day that the violation continued or until judgment is final for Defendant's unlawful retaliation against him resulting from his complaints relating to unpaid minimum wage.

/ / /

## JURISDICTION AND VENUE

5.     The FLSA authorizes civil actions by private parties to recover damages for violations of the FLSA's wage and hour provisions.  This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case and controversy as the FLSA claim.  The state and federal claims derive from a common nucleus of operative fact, the state law claims will not substantially dominate over the FLSA claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because substantial decisions and events giving rise to the claims occurred in the State of Arizona within this District.

8.     The United States District Court for the District of Arizona has personal jurisdiction because Defendant conducts business within this District and the actions giving rise to this Complaint occurred in this District.

9.     At all relevant times, Defendant has been an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

10.     At all relevant times, Defendant was an employer as defined by 29 U.S.C. § 203(d), A.R.S. § 23-362(B), and A.R.S. § 23-350(3) and a "person" under 29 U.S.C. § 213(a)(1).

11.     Plaintiff and the other similarly situated Tow Trucker Drivers are employees as defined in 29 U.S.C. § 203(e)(1), A.R.S. § 23-362(A), and A.R.S. § 23-350(2) and are non-exempt employees under 29 U.S.C. § 213(a)(1).

12.     At all relevant times, Defendant does not qualify for the "retail or services establishment" exemption under the FLSA.

/ / /

13.     Defendant failed to pay Plaintiff and the Tow Truck Drivers time and a half the minimum wage during workweeks throughout the relevant time period.

14.     At all relevant times, Defendant employed Tow Truck Drivers to provide towing and roadside assistance in Arizona, including Plaintiff Kevin Barrett and those persons similarly situated to Plaintiff who are members of the putative collective action and class action classes (collectively referred to as "Tow Truck Drivers").

15.     At all relevant times, Plaintiff and the other members of the putative classes were engaged in commerce and/or worked for Defendant in an enterprise engaged in commerce.

16.     At all relevant times, Defendant has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made or business done is greater than $500,000.

## PARTIES

17.     Defendant Professional Towing and Recovery, LLC is an Arizona corporation with its headquarters and principal place of business located at 3420 N. 27th Avenue, Phoenix, Arizona, Suite A, 85017.

18.     Professional Towing was founded in 2006.  Through its Tow Truck Drivers like Plaintiff, Professional Towing provides towing and roadside assistance services in Arizona, specifically in the Phoenix metropolitan area.

19.     Defendant Professional Towing and Recovery, LLC exercises its authority to control the day-to-day operations of the business where Plaintiff and the Tow Truck Drivers work, including matters related to setting and paying compensation to the Tow Truck Drivers, such that they are liable to Plaintiff and the Tow Truck Drivers as an employer.

20.     Plaintiff Barrett was, at all relevant times, an individual residing in the Phoenix, Arizona metropolitan area.

21.     At all relevant times, Plaintiff Barrett was employed by Professional Towing in Arizona as a Light Duty Tow Truck Driver, a non-exempt position.  Plaintiff Barrett's Consent to be a Named Plaintiff and Opt-In to Lawsuit pursuant to 29 U.S.C. § 216(b) is

- 4 -

attached hereto as **Exhibit 1**, and Plaintiff affirms that he wishes to opt in as a party plaintiff to this lawsuit in accordance with the opt in procedures under the FLSA.

### STATEMENT OF FACTS

22.     Defendant Professional Towing is an "employer" within the meaning of the FLSA, the Arizona Minimum Wage Statute, and unpaid wage and paid sick time claims under the Arizona Wage Statute and Arizona Paid Sick Time Statute.

23.     Defendant operates numerous facilities in the Phoenix, Arizona metropolitan area, including in Phoenix, Tempe and Gilbert.  Defendant hires Tow Truck Drivers like Plaintiff to provide towing and roadside assistance services.

24.     Plaintiff was employed by Professional Towing as a Light Duty Tow Truck Driver from October 17, 2022 until July 19, 2023.  He worked for Defendant at its Tempe facility in the Phoenix metropolitan area.

25.     Plaintiff was a non-exempt employee.

26.     Plaintiff's primary job was to tow vehicles and provide roadside assistance within the Phoenix metropolitan area.  Plaintiff never went outside of the state of Arizona in performing his job duties.

27.     As a light duty tow truck driver, the truck he drove had a vehicle weight of less than 10,000 pounds.

28.     For the first few weeks Plaintiff was employed, Plaintiff was paid an hourly rate of $15.00 per hour for on-the-job training.  Plaintiff regularly worked more than forty hours in a workweek while he was training but Defendant did not pay Plaintiff an overtime wage.

29.     After the training period, Defendant no longer paid Plaintiff an hourly wage. Instead, it paid Plaintiff a commission based on "23% of total generated revenue."

30.     Despite the Company's policy of basing commissions on "total generated revenue", upon information and belief, throughout Plaintiff's employment, Defendant consistently miscalculated commissions, resulting in Plaintiff not being paid for commissions due and owing and constituting wages under the Arizona Wage Statute.  For

example, Defendant would reduce the "total revenue generated" on assigned tow jobs by the expense of gas used in completing those jobs.  Such reductions in the "total generated revenue" calculations resulted in Defendant failing to pay all regular wages earned by and due to Plaintiff.

31.    Further, Plaintiff regularly worked more than forty hours in a workweek, but Defendant did not pay Plaintiff an overtime wage calculated on his regular hourly wage.

32.    During a typical week, Plaintiff was scheduled to work Friday through Tuesday from 5am until 5pm.  Later in his employment, there were times he was scheduled to work Friday through Tuesday from 6am to 5pm.

33.    However, due to the nature of his work and additional staffing needs from Professional Towing, Plaintiff was often scheduled to work additional shifts beyond 5 days a week or had to work additional hours over his scheduled shifts several days a week.

34.    In addition to his scheduled hours, Plaintiff was required to arrive to work 10 minutes before the start of his shift to perform an inspection of the tow truck.  Plaintiff was not responsible for performing major repairs or safety issues on the truck as Defendant employed/contacted with mechanics for that purpose.

35.    During his shift, Plaintiff was responsible for taking calls for towing requests that came through the dispatch center.  If there were no calls coming in, Plaintiff was required to remain wherever he had ended his last tow and be on call ready to provide services as necessary during his shifts.  If a call came towards or at the end of his shift, Plaintiff was still required to answer the call and provide the requested services even if that meant he would be working additional time after his shift.

36.    When his shift was done, Plaintiff would need to go back to the dispatch center to return the tow truck.

37.    Plaintiff did not have the ability to clock in/out each day at the beginning and end of his shifts as the Company's system for clocking in and out consistently failed throughout Plaintiff's employment.

/ / /

38.    Plaintiff did not have opportunities to develop business or increase his pay as it was controlled by the calls he received from the dispatch center as the calls came in.

39.    Defendant did not guarantee Plaintiff an hourly wage or weekly salary.

40.    Defendant paid Plaintiff less wages if he did not work because that necessarily meant he towed fewer vehicles.

41.    Defendant consistently paid Plaintiff weekly compensation that was less than minimum wage for all hours worked.

42.    Defendant did not pay Plaintiff an overtime wage of 1.5 times his regular rate for all hours worked over forty in the workweek.  In the alternative, Defendant did not pay Plaintiff his proper overtime wage for all hours worked over forty in the workweek.

43.    Defendant intentionally failed to pay Plaintiff overtime pay, and Defendant's payment policies were established without regard to Plaintiff's rights to lawful wages.

I.    **Professional Towing Routinely And Consistently Failed To Pay The Tow Truck Drivers Like Plaintiff All The Compensation They Were Due**

A.    ***Unpaid Minimum Wage***

44.    Employees like Plaintiff and the Tow Truck Drivers in Arizona must be paid the minimum wage, which in 2020 was $12.00 per hour, in 2021 was $12.15 per hour, in 2022 was $12.80 per hour, and in 2023 is $13.85.

45.    Tow Truck Drivers like Plaintiff are routinely required to work at least 60-70 hours per week pursuant to their schedules.  In addition, Tow Truck Drivers were supposed to arrive 10 minutes before the start of their shifts to inspect the tow truck and then after their shifts are done are required to go back to the dispatch center to return the tow trucks.

46.    When accounting for the hours Plaintiff and the Tow Truck Drivers are actually required to work, including the time they are required to work before and after their shifts, Plaintiff and the Tow Truck Drivers' wages routinely fall below the minimum wage.

47.    For example, Plaintiff's March 31, 2023 pay statement for the period of March 13, 2023 to March 26, 2023, indicates that he was paid gross wages in the amount of $1,514.14.  Based on the number of hours Plaintiff was typically scheduled to work (60-70

per workweek), his hourly wage would have been approximately $10.26 to $12.62 per hour, which is below the minimum wage.

48.    Similarly, Plaintiff's November 23, 2022 pay statement for the period of November 7, 2022 to November 20, 2022, indicates that he was paid gross wages in the amount of $1,253.23.  Based on the number of hours Plaintiff was typically scheduled to work (60-70 hours per workweek), his hourly wage would have been approximately $8.95 to $10.44 per hour, which is below the minimum wage.

49.    These examples of Plaintiff's wages falling below the minimum wage are indicative of how he and the Tow Truck Drivers were paid wages less than what is required by law during their employment.

### B.    Unpaid Wages, including Regular and Overtime Compensation

50.    Professional Towing routinely failed to pay Plaintiff and the Tow Truck Drivers all the wages they were due, including regular wages and overtime wages they earned and were due.

51.    Although Professional Towing had a policy and practice of paying Tow Truck Drivers like Plaintiff on a commission basis based on "23% of total generated revenue," the "total generated revenue" was consistently under-calculated.  As a result, Defendant failed to pay Plaintiff and the Tow Truck Drivers the proper amount of regular wages constituting commissions they had earned and were due.

52.    Further, the Tow Truck Drivers like Plaintiff are required to complete training when they started their employ with Defendant which routinely resulted in more than forty (40) hours worked in a workweek.

53.    Defendant failed to pay Plaintiff and the Tow Truck Drivers for all overtime hours worked over 40 hours in a workweek during their training period.

54.    For example, Plaintiff's November 1, 2022 paystub indicates that between October 17, 2022 (the day Plaintiff started) and October 31, 2022, Plaintiff worked 96 hours at an hourly rate of $15.  Thus, during this pay period, Plaintiff worked more than 40 hours per workweek yet was paid $0.00 in overtime pay.

55.    After the initial training period, Plaintiff and the Tow Truck Drivers were paid a commission based on "23% of total generated revenue," and those wages were timely due to Plaintiff and other similarly situated Tow Truck Drivers pursuant to the Arizona Wage Statute.

56.    As non-exempt employees, Plaintiff and the other similarly situated Tow Truck Drivers are or were entitled to overtime wages for hours worked in excess of forty (40) each workweek.  In the alternative, Plaintiff and the Tow Truck Drivers were entitled to be paid the proper overtime wage of all hours worked over forty (40) in each workweek.

57.    For example, Plaintiff's November 23, 2022 pay statement for the period of November 7, 2022 to November 20, 2022, indicates that he was paid gross wages in the amount of $1,253.23.  Based on the number of hours Plaintiff was typically scheduled to work (60-70 hours per workweek), his hourly wage would have been approximately $8.95 to $10.44 per hour, which is below the minimum wage and does not account for any overtime wages.

58.    Defendant's failure to pay for all the overtime hours worked was not an isolated practice.

59.    For example, Plaintiff's March 17, 2023 pay statement for the period of February 27, 2023 to March 12, 2023, indicates that he was paid gross wages in the amount of $1,551.80.  Based on the number of hours Plaintiff was typically scheduled to work (60-70 per workweek), his hourly wage would have been approximately $11.08 to $12.93 per hour, which is below the minimum wage.  And, Plaintiff's March 31, 2023 pay statement for the period of March 13, 2023 to March 26, 2023, indicates that he was paid gross wages in the amount of $1,514.14.  Based on the number of hours Plaintiff was typically scheduled to work (60-70 per workweek), his hourly wage would have been approximately $10.26 to $12.62 per hour, which is below the minimum wage.  Neither of these pay statements reflect any overtime wages.

/ / /

/ / /

60.    Defendant's policy and practice of paying Plaintiff and other similarly situated Tow Truck Drivers commissions has denied them proper regular wages and overtime pay for all hours worked in excess of 40 hours in a work week.

61.    The pay periods identified in this Complaint are indicative of how Plaintiff was typically paid in a manner that caused him not to receive minimum wage and overtime wages he earned and was due under the FLSA, the Arizona Minimum Wage Statute, and the Arizona Wage Statute.

62.    Defendant failed to timely pay Plaintiff and the Tow Truck Drivers for all the wages he was due for work he performed, including regular and overtime wages.

63.    A significant part, if not all, of this unpaid regular and overtime work is evidenced in Defendant's own payroll, time-recording, and attendance records, most of which are exclusively in Defendant's own possession.

**C.    *Paid Sick Time Violations***

64.    In addition, Defendant failed to provide the requisite notice to Plaintiff and the Tow Truck Drivers of their rights to paid sick time pursuant to Arizona law, and Defendant failed to accrue and provide the paid sick time as required by Arizona law.

65.    Plaintiff was not provided notice of accrued paid sick time with his pay statements in violation Arizona law.

66.    Plaintiff was also never provided notice of his rights related to paid sick time in violation of Arizona law.  In fact, when Plaintiff inquired about whether he was eligible for paid sick time, Defendant told him that the Company was not required to pay the Tow Truck Drivers, like Plaintiff, for sick time because they were paid on a commission basis.

67.    Throughout his employment, Plaintiff had to take time off time because he was sick on a couple of occasions.  Although Defendant was aware he was sick, Plaintiff was not offered paid sick time or paid for his sick time off despite having accrued and been eligible to use such time in accordance with Arizona law.

68.    Defendant's wage and paid sick time violations uniformly applied to Tow Truck Drivers throughout Arizona.

**II.** **Professional Towing's Compensation Policies And Practices Are Willful And Result In Violations Of The FLSA, The Arizona Minimum Wage Statute, the Arizona Paid Sick Time Statute, And The Arizona Wage Statute**

69.     Defendant's policy and practice is to willfully deny its non-exempt Tow Truck Drivers proper pay for all hours worked, including regular wages, paid sick time, minimum wage and overtime worked beyond forty (40) in a workweek.

70.     Upon information and belief, Defendant applied and instituted the above-described willful and illegal policies and practices failing to pay all wages due including regular wages, paid sick time, minimum wage and overtime wages, at all of Defendant's sites in the Phoenix metropolitan area.

71.     As a result of its policies, Defendant fails to pay regular wages, paid sick time, minimum wage and overtime wages, resulting in payroll and tax savings to Defendant. Defendant enjoys ill-gained profits at the expense of Plaintiff and other similarly situated Tow Truck Drivers.

72.     During his employment, Plaintiff spoke with other Tow Truck Drivers at the Tempe facility, as well as those who worked at the Phoenix and Gilbert facilities, about Defendant's unlawful pay policies, learning that they also were subject to the same unlawful pay practices that he was experiencing.

**III.** **Professional Towing Retaliated Against Plaintiff For His Complaints Regarding Professional Towing's Compensation Policies And Practices**

73.     Throughout his employment, Plaintiff expressed concerns to Defendant about its unlawful pay practices, including its failure to pay proper minimum wage and overtime.

74.     However, on or about July 10, 2023, Plaintiff became even more direct in his complaints about unpaid wages.  He complained to his manager and Human Resources that he was not even making the minimum wage on some of his paychecks and despite the long hours was never paid overtime, which resulted in unpaid wages under the Arizona Wage Statute, Arizona Minimum Wage Statute, and the FLSA.

/ / /

75.    One week later, on July 19, 2023, in retaliation for and as a direct and proximate result of Plaintiff's complaints relating to unpaid minimum wage and overtime, Defendant raised job performance issues for the first time and terminated Plaintiff's employment at Professional Towing.

76.    Defendant's adverse employment action against Plaintiff was unlawful retaliation for Plaintiff's complaints about Defendant's unlawful wage practices resulting in unpaid minimum wage and overtime and violations of Arizona law and public policy arising from the obligation to timely pay wages due under the Arizona Wage Statute.

77.    Defendant's adverse employment actions were malicious and punitive in nature and caused Plaintiff both economic and non-economic damages, including lost wages, emotional distress, embarrassment, and other damages.

## COLLECTIVE ACTION ALLEGATIONS

78.    Plaintiff Barrett brings Count I and II, the FLSA unpaid overtime and minimum wage claims, pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following similarly situated employees of Defendant:

> All Light Duty Tow Truck Drivers who worked for Professional Towing and Recovery, LLC in Arizona during the last three years ("Collective Action Members").

79.    Plaintiff, on behalf of himself and all other similarly situated Tow Truck Drivers, seeks relief on a collective basis challenging Defendant's practice of failing to pay them the minimum wage for all hours worked and failing to accurately record work time and pay its employees for all hours worked, including overtime.  The number and identity of other individuals yet to opt-in and consent to join the collective action may be determined from Defendant's records and potential Collective Action Members may easily and quickly be notified of the pendency of this action.

80.    Plaintiff is similarly situated to the Collective Action Members because they are all subject to similar payroll policies and procedures.  Defendant requires the similarly situated Collective Action Members to work more than 40 hours in a workweek but fails

to pay them overtime.  Defendant also fails to pay the Collective Action Members the minimum wage for all hours worked.  The Collective Action Members are also similarly situated because they all utilize Defendant's time recording and reporting practices, which fail to accurately account and pay for all time worked including overtime.

81.     Defendant's overtime and minimum wage practices were routine and consistent.  Throughout the relevant time period over the past three years, the Collective Action Members regularly were not paid the proper minimum wage and overtime despite working in excess of forty hours per week.

82.     Plaintiff and the Collective Action Members performed the same or similar job duties. Moreover, they regularly worked more than forty hours in a workweek. Accordingly, the employees victimized by Defendant's unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

83.     Defendant's failure to pay overtime and minimum wage compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action.  Thus, Plaintiff's experience is typical of the experience of the others employed by Defendant.

84.     The Collective Action Members, including Plaintiff, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40) and the minimum wage.  Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

85.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel experienced and competent in the practice of wage and hour law and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with the putative members of this collective action.

/ / /

/ / /

/ / /

1

## CLASS ACTION ALLEGATIONS

2          86.     Plaintiff brings Counts III-V, the Arizona Minimum Wage Statute and

3     Arizona Wage Statute claims, as a Rule 23 class action on behalf of himself and the

4     following persons:

5              All Light Duty Tow Truck Drivers who worked for Professional Towing and

6              Recovery, LLC in Arizona from September 25, 2020 to the present ("Arizona

7              Class Members").

8          87.     Plaintiff's Rule 23 class claims (Counts III-V) satisfies the numerosity,

9     commonality, typicality, adequacy, and superiority requirements of a class action pursuant

10    to Fed. R. Civ. P. 23.

11         88.     Plaintiff's Rule 23 state law class claim (Counts III-V) satisfies the

12    numerosity requirement of a class action.  The Arizona Class Members identified above are

13    so numerous that joinder of all members is impracticable.  Although the precise number of

14    potential class members is unknown, and the facts for calculating that number are presently

15    within the sole control of Defendant, upon information and belief, there are a significant

16    number of Arizona Class Members to satisfy numerosity.

17         89.     Questions of law and fact common to the Arizona Class Members

18    predominate over questions that may affect only individual members because Defendant

19    has acted on grounds generally applicable to all Arizona Class Members.  Among the

20    questions of law and fact common to Plaintiff and the Arizona Class Members are:

21             a.     whether Defendant employed the Arizona Class Members within the meaning

22                    of the Arizona Minimum Wage Statute and the Arizona Wage Statute;

23             b.     whether Defendant owes the Arizona Class Members wages in exchange for

24                    all work performed, including regular and overtime hours worked;

25             c.     whether Defendant unlawfully failed to timely pay Arizona Class Members

26                    wages for all hours worked, including regular and overtime hours worked;

27

28

d.      whether Defendant is liable for damages under the Arizona Wage Statute, including but not limited to compensatory damages, interest, and treble damages;

e.      whether Defendant unlawfully failed to pay Arizona Class Members the minimum wage;

f.      whether Defendant is liable for damages under the Arizona Minimum Wage Statute;

g.      whether Defendant owes paid sick time or other penalties to the Arizona Class Members for its failure to accrue and provide paid sick time and provide requisite notice of paid sick time as required by Arizona law.

90.     Plaintiff's claims under Arizona state law are typical of those of the Arizona Class Members in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful payroll practices as Plaintiff.

91.     The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

92.     A class action is appropriate for the fair and efficient adjudication of this controversy.  Defendant acted or refused to act on grounds generally applicable to the entire class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of the class members to protect their interests.  The damages suffered by individual class members may be relatively small, and the expense and burden of individual litigation make it virtually impossible for the members of the class action to individually seek redress for the wrongs done to them.

93.     Plaintiff will fairly and adequately represent the interests of the Arizona Class Members and has retained counsel that is experienced and competent in the fields of wage

and hour law and class action litigation. Plaintiff has no interest that is contrary to or in conflict with those members of this class and collective action.

**COUNT I**
**COLLECTIVE ACTION FOR VIOLATION OF THE**
**FAIR LABOR STANDARDS ACT**
**(Failure to Properly Pay Overtime Wages and Record Keeping Violations - FLSA - 29 U.S.C. § 207 *et seq.*; Brought Against Defendant by Plaintiff Barrett Individually and on Behalf of the Collective Action Members)**

94.    Plaintiff, on behalf of himself and all Collective Action Members, reasserts the allegations set forth in the above paragraphs.

95.    Defendant paid Plaintiff and the Collective Action Members on an hourly and/or commission basis, and they were and are all entitled to the overtime protections of the Fair Labor Standards Act as set forth in 29 U.S.C. §§ 201, *et seq*.

96.    At all relevant times, Defendant has been, and continues to be, subject to the minimum wage and overtime provisions of the FLSA because its employees are engaged in commerce and Defendant has annual revenues in excess of $500,000.

97.    Plaintiff and the Collective Action Members are non-exempt employees entitled to the statutorily mandated overtime pay according to the FLSA.

98.    Defendant was an employer pursuant to 29 U.S.C. § 203(d).

99.    Defendant failed to comply with 29 U.S.C. § 207 because Plaintiff and the Collective Action Members worked for Defendant in excess of forty hours per week, but Defendant failed to pay them for those excess hours at the statutorily required rate of one and one-half times their regular rate of pay as required by the FLSA, or, in the alternative, Defendant failed to pay them proper overtime wage for all hours worked over forty in the workweek.

100.    Plaintiff and other similarly situated Tow Truck Drivers performed work causing them to work in excess of forty (40) hours in certain workweeks.

101.    This work was performed at Defendant's direction and/or with Defendant's knowledge.

102.    Defendant willfully violated the FLSA by failing to pay Plaintiff and the other Collective Action Members all wages due including overtime wages for all hours accrued beyond forty (40) in a workweek.

103.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions complied with the FLSA.

104.    At all relevant times, Defendant willfully, regularly, and repeatedly failed, and continues to fail to make, keep, and preserve accurate time records required by the FLSA with respect to Plaintiff and the other similarly situated Tow Truck Drivers, including records determining the wages and hours of employment pertaining to Plaintiff and the similarly situated Tow Truck Drivers.

105.    As a result of the willful violations of the FLSA's overtime pay provisions, Defendant has unlawfully withheld overtime wages from Plaintiff and Collective Action Members.  Accordingly, Defendant is liable to Plaintiff and the Collective Action Members for unpaid overtime compensation, an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant, and pray this Court:

a.    Certify the claim set forth in Count I above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly situated non-exempt Light Duty Tow Truck Drivers, who worked for Defendant during the last three years in Arizona, informing them of their right to file consents to join the FLSA portion of this action;

b.    Designate Plaintiff Barrett as the Representative Plaintiff of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members;

c.    Award Plaintiff and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

d.  Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law;

e.  Award Plaintiff and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendant is financially responsible for notifying the Collective Action Members of Defendant's alleged wage and hour violations; and

f.  Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

## COUNT II
### COLLECTIVE ACTION FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT
**(Failure to Properly Pay Minimum Wage and Record Keeping Violations – FLSA – 29 U.S.C. § 206 *et seq.*; Brought Against Defendant by Plaintiff Barrett Individually and on Behalf of the Collective Action Members)**

106.  Plaintiff, on behalf of himself and the Collective Action Members, reasserts the allegations set forth in the above paragraphs.

107.  Defendant paid Plaintiff and the Collective Action Members on a commission basis, and they are and were all entitled to the minimum wage protections of the FLSA as set forth in 29 U.S.C. §§ 201, *et seq.*

108.  At all relevant times, Defendant has been, and continues to be, subject to the minimum wage and overtime provisions of the FLSA because its employees are engaged in interstate commerce and Defendant has annual revenues in excess of $500,000.

109.  Plaintiff and the Collective Action Members are non-exempt employees entitled to the statutorily mandated minimum wage.

110.  Defendant was an employer pursuant to 29 U.S.C. § 203(d).

111.  Defendant failed to comply with 29 U.S.C. § 206 because Defendant failed to pay Collective Action Members the minimum wage as required by the FLSA.

112.  The work was performed at Defendant's direction and/or with Defendant's knowledge.

113.    Defendant willfully violated the FLSA by failing to pay Plaintiff and the other Collective Action Members all the minimum wage due.

114.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions complied with the FLSA.

115.    As a result of the aforesaid willful violations of the FLSA's minimum wage pay provisions, Defendant has unlawfully withheld minimum wages from Plaintiff and the Collective Action Members.  Accordingly, Defendant is liable to Plaintiff and the Collective Action Members for unpaid wages including minimum wage compensation, an additional equal amount in liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant, and pray this Court:

a.    Certify the claim set forth in Count II above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly situated employees non-exempt Light Duty Tow Truck Drivers in Arizona during the last three years, informing them of their right to file consents to join the FLSA portion of this action;

b.    Designate Plaintiff Barrett as the Representative Plaintiff of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members;

c.    Award Plaintiff and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

d.    Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law;

e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendant is financially responsible for notifying the Collective Action Members of Defendant's alleged wage and hour violations; and

f.      Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**COUNT III**
**FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE**
**ARIZONA MINIMUM WAGE STATUTE**
**(Failure to Pay Minimum Wage, A.R.S. § 23-362 *et seq.*; Brought Against Defendant**
**by Plaintiff Barrett Individually and on Behalf of the Arizona Class Members)**

116.    Plaintiff, on behalf of himself and the Arizona Class Members, reasserts the allegations set forth in the above paragraphs.

117.    At all material times hereto, Plaintiff and the Arizona Class Members were employed by Defendant within the State of Arizona and have been entitled to the rights, protections, and benefits provided under the Arizona Minimum Wage Statute.

118.    Plaintiff and the similarly situated employees were entitled to the minimum wage as defined by A.R.S. § 23-363.

119.    Defendant was an employer pursuant to A.R.S. § 23-362(B).

120.    Defendant is aware that, under A.R.S. § 23-363, it was obligated to pay minimum wage due to Plaintiff and the Arizona Class Members.

121.    Defendant failed to pay Plaintiff and the Arizona Class Members minimum wage due without a good faith basis for withholding wages.

122.    Defendant has willfully failed and refused to pay minimum wage due to Plaintiff and the Arizona Class Members.  As a result of Defendant's unlawful acts, Plaintiff and the Arizona Class Members are entitled to the statutory remedies pursuant to A.R.S. § 23-364, including the balance of wages owed, interest thereon, an additional amount equal to twice the underpaid wages, and attorneys' fees and costs.

123.    The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.  Certify the state law claim set forth in Count III above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.  Designate Plaintiff Barrett as the Class Representative of the Arizona Class Members and undersigned counsel as the attorneys representing the Arizona Class Members;

c.  Award Plaintiff and all similarly situated employees compensatory damages and statutory damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. § 23-364;

d.  Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

e.  Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**COUNT IV**
**FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE ARIZONA WAGE STATUTE**
**(Failure to Timely Pay Wages Due, A.R.S. § 23-350 *et seq.*; Brought Against Defendant by Plaintiff Barrett Individually and on Behalf of the Arizona Class Members)**

124.  Plaintiff, on behalf of himself and the Arizona Class Members, reasserts the allegations set forth in the above paragraphs.

125.  At all material times hereto, Plaintiff and the Arizona Class Members were employed by Defendant within the State of Arizona and have been entitled to the rights, protections, and benefits provided under the Arizona Wage Statute.

126.  Defendant was aware of its obligation to pay timely wages pursuant to A.R.S. § 23-351.

127.  Defendant is aware that, under A.R.S. §§ 23-351-353, it was obligated to timely pay all wages due to Plaintiff and the Arizona Class Members, including regular wages, minimum and overtime wages.

128.  Defendant failed to timely pay Plaintiff and the Arizona Class Members wages he was due without a good faith basis for withholding wages.

129.    Defendant has willfully failed and refused to timely pay wages due to Plaintiff and the Arizona Class Members.  As a result of Defendant's unlawful acts, Plaintiff and the Arizona Class Members are entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

130.    The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.    Certify the state law claim set forth in Count IV above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.    Designate Plaintiff Barrett as the Class Representative of the Arizona Class Members and undersigned counsel as the attorneys representing the Arizona Class Members;

c.    Award Plaintiff and all similarly situated employees compensatory damages and treble damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. § 23-350 *et seq.*;

d.    Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

e.    Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**COUNT V**
**FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE ARIZONA WAGE STATUTE**
**(A.R.S. §§ 23-364; 23-371 *et seq.*; Failure to Provide Earned Paid Sick Time; Brought Against Defendant by Plaintiff Barrett Individually and on Behalf of the Arizona Class Members)**

131.    Plaintiff, on behalf of himself and the Arizona Class Members, reasserts the allegations set forth in the above paragraphs.

132.    At all material times hereto, Plaintiff and the Arizona Class Members were employed by Defendant within the State of Arizona and have been entitled to the rights,

protections, and benefits provided under A.R.S. §§ 23-364 and 23-371 *et seq.* relating to paid sick time.

133.    Defendant was aware of its obligation to accrue and provide paid sick time pursuant to A.R.S. §§ 23-364 and 23-371 *et seq*.

134.    Defendant is aware that, under A.R.S. §§ 23-364 and 23-372-374, it was obligated to accrue and provide paid sick time to Plaintiff and the Arizona Class Members.

135.    Defendant is also aware that it was obligated to provide written notice to Plaintiff and the Arizona Class Members of their rights relating to paid sick time and also provide the amount of paid sick time accrued with their pay stubs.

136.    Defendant failed to provide Plaintiff and the Arizona Class Members paid sick time or requisite notice of their rights or amounts accrued in violation of A.R.S. §§ 23-364 and 23-372 *et. seq.* and did not have a good faith basis for doing so.

137.    Defendant has willfully failed and refused to comply with the requirements for providing paid sick time to Plaintiff and the Arizona Class Members.  As a result of Defendant's unlawful acts, Plaintiff and the Arizona Class Members are entitled to the statutory remedies provided pursuant to A.R.S. § 23-375(E) of at least $250 for a first violation and $1,000 for each subsequent violation and other applicable remedies provided by Arizona law including A.R.S. § 23-364.

138.    The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.    Certify the state law claim set forth in Count V above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.    Designate Plaintiff Barrett as the Class Representative of the Arizona Class Members and undersigned counsel as the attorneys representing the Arizona Class Members;

c.   Award Plaintiff and all similarly situated employees compensatory damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. §§ 23-364 and 23-371 *et seq.* and other applicable Arizona law;

d.   Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

e.   Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

### COUNT VI
**FLSA RETALIATION IN VIOLATION OF 29 U.S.C. § 15(a)(3)**
**(Brought Against Defendant by Plaintiff Barrett Individually)**

139.   Plaintiff, on behalf of himself, reasserts the allegations set forth in the above paragraphs.

140.   The Fair Labor Standards Act prohibits any person from discharging or in any other manner discriminating against any employee who complains of a violation of the Act or causes to be instituted any proceeding under or related to the Act.

141.   At all relevant times, Professional Towing was an employer covered by the Fair Labor Standards Act and Plaintiff was an employee covered by the Act.

142.   Plaintiff engaged in protected activity when he complained to Defendant about its unlawful failure to pay all minimum wages and overtime owed pursuant to the Fair Labor Standards Act, and when he notified Defendant of its wage violations.

143.   As a direct and proximate result of Plaintiff's complaints about Defendant's unlawful overtime and minimum wage practices, Defendant took the adverse employment action of terminating Plaintiff.

144.   Defendant acted in retaliation when it terminated Plaintiff from his job because he engaged in protected activity by reporting violations of the Fair Labor Standards Act.

145.   There is a causal connection between Plaintiff engaging in the protected activity and Defendant's adverse employment action of terminating Plaintiff in that but for

- 24 -

the Plaintiff engaging in the protected activity, Defendant would not have terminated Plaintiff's employment.

146.    Plaintiff's protected activity was a motivating factor in the decision by Defendant to terminate Plaintiff.

147.    Defendant's conduct was willful and Defendant's actions were punitive, malicious, and in direct retaliation for his complaints of FLSA violations.

148.    As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, emotional distress, embarrassment, and other economic and non-economic losses.

149.    Defendant's conduct in taking adverse action against Plaintiff's employment was done with ill will, spite, malice, for the purpose of injuring Plaintiff and with a complete indifference of Plaintiff's rights.

150.    Defendant's conduct in taking adverse action toward Plaintiff's employment harmed Plaintiff and was malicious, oppressive or in reckless disregard of his rights. Defendant therefore should be required to respond to Plaintiff in the form of a punitive or exemplary damage award under federal law.

WHEREFORE, Plaintiff demands judgment against Defendant and prays this Court:

a.    Award Plaintiff compensatory and punitive damages, including lost wages and non-economic damages flowing from Defendant's unlawful retaliation, plus an equal amount in liquidated damages and attorneys' fees and costs;

b.    Award Plaintiff prejudgment and post-judgment interest as provided by law; and

c.    Award Plaintiff such other relief as this Court deems fair and equitable, including injunctive relief.

### COUNT VII
### WRONGFUL TERMINATION IN VIOLATION OF A.R.S. § 23-362 *et seq*.
### (Brought Against Defendant by Plaintiff Barrett Individually)

151.    Plaintiff incorporates by reference all the above allegations as though fully set forth herein.

152.    At all relevant times, Professional Towing was an employer under A.R.S. § 23-362 *et seq.* and Plaintiff was an employee under A.R.S. § 23-362 *et seq.* subject to the protections of the Arizona Minimum Wage Statute.

153.    Defendant violated A.R.S. § 23-363 by failing to pay Plaintiff the minimum wage as set forth in the statute.

154.    Defendant violated A.R.S. § 23-364(B) by terminating Plaintiff's employment with Defendant within days after reporting minimum wage violations to management.

155.    There is a presumption of retaliation as a result of the close temporal proximity to Plaintiff's complaints relating to minimum wage and his termination.  A.R.S. § 23-364(B).

156.    "Any employer who fails to pay the wages required under this article shall be required to pay the employee the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages.  Any employer who retaliates against an employee or other person in violation of this article shall be required to pay the employee an amount set by the commission or a court sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars ($150) for each day that the violation continued or until legal judgment is final."  A.R.S. § 23-364(G).

157.    As a direct and proximate result of Defendant's unlawful retaliation resulting from Plaintiff's complaints related to unpaid minimum wage, Plaintiff has been damaged and is entitled to recover damages sufficient to compensate him for the harm he suffered and deter future violations, but not less than one hundred fifty dollars ($150) for each day that the violation continued or until a legal judgment is final as well as Plaintiff's attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendant and prays this Court:

a.    That liability be imposed on Defendant for its violations of the Arizona Minimum Wage Statute;

b.  That Plaintiff be awarded compensatory damages, punitive damages, and attorneys' fees and costs pursuant to A.R.S. § 23-364(G), including not less than one hundred fifty dollars ($150) for each day that the violation continued or until legal judgment is final;

c.  Award Plaintiff compensatory and punitive damages, including lost wages and non-economic damages flowing from Defendant's unlawful retaliation, plus attorneys' fees and costs;

d.  Award Plaintiff prejudgment and post-judgment interest as provided by law; and

e.  Award Plaintiff such other relief as this Court deems fair and equitable, including injunctive relief.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims with respect to which he may have the right to a jury.

DATED:  September 25, 2023.

**FRANKEL SYVERSON PLLC**

By    *s/Patricia N. Syverson*
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

**FRANKEL SYVERSON PLLC**
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

*Attorneys for Plaintiff*